May it please the court, Swetha Patel here for petitioner Safeway. I'd like to set aside three minutes for rebuttal. All right, that's your clock. Safeway's petition seeks to correct the board's erroneous decision that Safeway must provide the union with its third-party contract with Instacart. The board's decision is in direct contradiction with well-established precedent. The either-or standard used by the ALJ and adopted by the board in this case is inconsistent with the board's decision in Disneyland Park, and effectively overturns the Supreme Court's decision in ACME. The ALJ departed from precedent and created a new improper standard, which requires de novo review, as set forth by this court and Garcia and Airline Pilots. Now, although it is undisputed in this case that the union had the burden to prove relevance of the Instacart contract, the ALJ and the board failed to apply applicable standard in analyzing whether the union met its burden. The Supreme Court in ACME set forth a degree to which the union must establish relevance. In accordance with ACME, the NLRB and Disneyland in 2007 set forth how a union must establish relevance, which is by, quote, a reasonable belief supported by objective evidence that the requested information is relevant, unquote. As counsel... Oh, yes, go ahead. Go ahead, Judge. About the photographs and the other evidence that there had been Instacart employees and the union has observed doing work that appeared to fall under the collective bargaining agreement as reserved for Safeway employees, union members. Well, the board's decision specifically relies on the April 26, 2018 email sent by the union putting forward its reasons for wanting the contract. Speaking to the pictures provided, the CBA governs what work the union is entitled to do. There's no language, there cannot be any language in the Instacart contract that would resolve that issue. We must look at the words and the language in the CBA. Well, if the CBA is susceptible to the interpretation that it covers this work and the Instacart contract contracts out that work, wouldn't that be enough? We have to look at the April 26 letter or email, pardon me, that sets forth the union's reasons for wanting the contract. It was the union's burden to establish relevance. And in the April 26 email, they provide three reasons for wanting the contract. The first is to corroborate anecdotal witness observations. Now, logically, that doesn't make sense because the contract with Instacart and Safeway can't speak to what these witnesses observed, either they observed it or not, regardless of what the Instacart contract says. The second reason they offered for wanting the contract was that to determine if what their witnesses were observing was an intentional act or an occasional act. Well, here, Safeway admitted that the work that Instacart was doing was actually the work they were doing. There was no denying it. There was no question as to whether it was an intentional act or it wasn't. And regardless of whether it was an intentional act, the CBA does not change the remedy available to the union based on whether Instacart was performing work intentionally or unintentionally. The third reason the union provided for wanting the Instacart contract was for purposes of remedy. Again, the remedy would be determined by the terms of the CBA. There is nothing in the Instacart contract that could affect what remedy is available to the union here. So the three- Judge, you said that the contract cannot corroborate what the witnesses thought, because the contract doesn't say what the witnesses thought. Correct. I mean, even regardless of what the con- Judge Baya, we're having difficulty hearing you. Is the contract, is it there now? No. No. Let's do, is our tech person around? Yes, Judge, I'm here. Can you help us with the sound from Judge Baya? Sure. Judge Wardlaw, I'm gonna briefly mute your microphone. Feel free to mute it now. Judge Baya, can you try speaking now? A, B, C, D, 1, 2, 3, 4, 5, 6, can you hear me? Yes. Okay, so I'll, Judge Wardlaw, I'll turn your mic back on after Judge Baya's question is completed. Okay, shall I go ahead? Okay, Ms. Patel, if the witnesses were saying that they saw Instacart personnel taking objects off a shelf with a list in their hands and getting those objects into a shopping cart, and the contract said that the job of Instacart is to fulfill lists and get objects off the shelf and into the cart, would that not be corroborating the witness's testimony? Your Honor, the point is, even if the contract said, didn't have those specificities in there, because the contract is between Safeway and Instacart. It may not necessarily govern Instacart's terms and conditions with its employees, but regardless of what the Instacart contract says, the witnesses saw what they saw. Now here, we don't know precisely what these witnesses saw, because the union has never offered testimony or declarations from those witnesses. But regardless, Safeway admitted that Instacart employees are doing this work in the stores, but it's Safeway's contention that that work falls outside of the unit work. And so when this matter goes to arbitration, it would be the testimony of those witnesses as to what they saw, that would be before the arbitrator, along with the language in the CBA, that would determine whether the Instacart employees are doing unit work. Rick, go ahead. The contract between Instacart and Safeway says, can be objective evidence of what acts are expected to be done by the Instacart people. Is it not? It may be, but the problem here is, when the union said, sorry, go ahead. If the contract says, took soup off the shelf and put it in, I mean, if the witness said, they took soup off the shelf and put it in a cart, and the contract says, part of Instacart's duties are to take merchandise off the shelf and put it in the shopper's cart, that corroborates what the witnesses saw. Well, in response to the union putting forward the reason being to corroborate what the witnesses saw, Safer responded to that email, explaining why the Instacart contract is not necessary and would not necessarily corroborate what the witnesses saw. And the union- I don't want that. That's exactly what one party says is their position, but that is not objectively reasonable. Well, I refer the court to the Sarah Lee case here, which is on point factually to the case here. And in that case, the holding was that the employer did not violate the CBA, and pardon me, violate the act by not providing its contract with backhauling. The issue in that case was whether the backhauling being performed violated the CBA, whether backhauling was unit work. In the court they're held, either the CBA allows for backhauling or it doesn't, but the contract on backhauling was not relevant to that termination. In the same logic- Go ahead. Go ahead, finish your sentence, please. I was gonna say the same logic applies here. There's no dispute as to what Instacart is doing. And so the question only remains whether the CBA allows for Instacart to do what it was doing or it doesn't. And that will be determined by the language in the CBA alone. Well, doesn't that, doesn't the language, if the CBA makes this union work, isn't the contract with Instacart relevant to determining if there is a violation? That's what I have trouble. I would understand your argument if your argument was the CBA clearly exempts this from any union exclusivity. Or it doesn't cover this. Then you might be able to say the contract with Instacart isn't relevant. But if there is an argument that the CBA does cover it, isn't the contract with Instacart relevant to show more precisely what it is that they are in fact doing? And whether it is an overarching business plan of Safeways? Well, in order to determine whether the union established relevance, we have to look at the reasons they set forth in the April 26th email. And the reasons they set forth don't establish relevance. Even if the, whether Instacart's work was intentional or not intentional, deliberate or not deliberate, doesn't change the remedy available to Instacart. If unit work was being done and for arbitrary or fines that Instacart is performing unit work, then they would award, the arbitrator at that point would decide the remedy and we would move forward in that manner. Now, see, sorry, the union knew what Instacart was doing. There's no secret here about what Instacart was doing. In fact- Is Safeway taking the position that Instacart was in fact doing union work, conceding liability for a violation of the CBA? I didn't understand that to be the case. No, no. I'm saying that there's no secret as to what Instacart is doing. You know, we've been, Safeway has been upfront about that. The union knows what Instacart is doing. I'll refer you to exhibit excerpt page 392, which was provided to us by the union, which talks about the work that Instacart is doing. The only dispute, the only dispute, is whether the language in the CBA allows Instacart to do the work that the parties know that they are doing. And what is the language you rely on to suggest that the Instacart employees are doing non-union work? If you look, well, for one, in the appendix, sorry, I'll have to level that CBA up for you. You're looking at appendix F? F or E, either one. I think they're both the same here. All right. It says that order selectors shall work primarily performing those duties associated with selecting the merchandise ordered online through the business unit, otherwise known as grocery works. So it's limited to, say, proprietary online service? Is that your argument? Correct. Instacart is not, through our business unit, otherwise known as grocery works. But there is a dispute as to whether that, I think 1.2 of the contract makes this union work. And so I am concerned with your non-relevance argument as to the Instacart contract, because that would lay out more precisely what is the scope of Instacart's work. Well, your Honor, there's two standards of review here, right? There's substantial evidence where we'd focus more on whether the union established relevance. But as I was saying to your Honor, this case requires de novo review. If you look at the ALJ's decision, it's created a new standard, which is improper and not in accordance with Disneyland. I can refer you to the excerpt page four five at the bottom. The language is, the union satisfies its burden to do so if it demonstrates either a reasonable belief supported by objective evidence that the requested information is relevant, or a probability that the desired information was relevant and that it would be of use to the union in carrying out its statutory duties and responsibilities. Now, Disneyland does not set forth the either or standard. Both of those must be satisfied. But here, the ALJ created a new standard where the board can essentially pick and choose which standard to apply, and possibly even disregard the standard set forth in acting by the Supreme Court. If there's no questions, I'd like to reserve the rest of my time for rebuttal. All right, you may, who is next? I see two attorneys there. Good morning, Your Honor. David Tsai for the labor board. At the outset, the Safely's argument regarding the standard is a little bit puzzling, or the suggestion that the board didn't apply the Disneyland standard, because the board not only quoted directly from Disneyland, and of course, the Seminole Supreme Court case in ACME, but the Disneyland case itself, at page 1258, it says, quote, the board uses a broad discovery type standard determining the relevance of requested information. Potential or probable relevant information is sufficient to give rise to an employer's obligation to provide information. And that's the exact standard that the board applied here. There were substantial evidence that does support the board's finding that there was probable evidence of the unit and met that minimal burden of showing that the requested Instacart contract is relevant. First, the union informed Safely through its grievances that it believed that non-unit employees were performing unit work. In the process, it cited a specific provision of the collective bargaining agreement that the board reasonably found, and Safely has never disputed, very broadly defines unit work. Third, the, I'm sorry, excuse me, second, the company, the union provided Safely with supporting evidence that included photos showing that Safely was partnering with Instacart. Third, the union explained how the requested information would assist it in the handling and processing of its grievances, mainly that it would help corroborate witness observations as to the work that Instacart workers were doing or not doing. It would also help to establish the scope of the agreement between Instacart and Safely, and then also it could address the remedy. The union, and through its grievance, was asking that Safely pose the selector positions, but obtaining this contract and getting the full understanding of the relationship could arguably alter exactly what sort of remedy that Safely, the union would want Safely. And then finally, the union renewed its information request. It actually showed an example of the impact on unit employees by indicating that Instacart workers are asking Safely employees through the agreement that it had with Safely to validate alcohol purchases. So taking all this evidence together, the record amply supports the board's finding that union has shown a probability that the contract was relevant, and that therefore Safely violated the act by failing to provide the requested information. And I would note before addressing a couple of other points raised by Safely's counsel, that throughout this entire process, the union has made very clear that it was willing to address and negotiate over any confidentiality concerns. And in fact, the board's order even gives Safely the opportunity to bargain and address any confidentiality concerns that it might have. As far as the point that was raised by Safely's counsel that everything is answered by the bargaining agreements, very simply, the bargaining agreements do not define the work that Instacart is performing, nor do they define the relationship that Instacart has with Safely. When most of us go shopping at Safely, there is not a signed contract between that shopper and Safely. So for the union to want to understand exactly what the nature of their relationship is, what kind of control that Safely has over the Instacart shoppers, and whether it is some sort of an intentional or designed plan to undermine Safely's own shopping program that uses unionized workers, there is a significant understanding why that information would be relevant. And as far as- So counsel, can you be a little more specific about what you would expect to find in the Instacart agreement that would tell the union whether or not Instacart employees were performing bargaining unit work? Your Honor, the contract would arguably establish specifically what the Instacart workers were doing within the store, as far as shopping for groceries and whether that should have been work that's covered by the union employees. And it would also arguably show the type of control that Safely is exhibiting over those Instacart workers. Again, when most people go shopping at a Safely store, there is not a signed contract between the shopper and Safely. Right, so give me an example. For example, what would be within the bargaining unit work that is something an Instacart employee shouldn't be doing? Your Honor, the contract at section 1.2, which is found at pages 119 and 232 of the record excerpts, again, is the board found and Safely is never disputed, very broadly defines unit work to include anything related to the handling and selling of merchandise. And so there's- So is the argument that all Instacart work is then covered by the CBA? Arguably, yes. Again, that's something that in investigating the grievances that arguably it may or may not be, but that's precisely what the union is trying to uncover. So, but I mean, obviously the business plan of Instacart, not that I personally have used it, but as I understand it, is they do go shopping at various grocery stores and for people who contract with them, who don't want to go to the stores themselves, and they do handle merchandise and they do, and they take it back to the customer. So are you saying essentially that Instacart service is completely within the bargaining unit as broadly construed? Your Honor, I can't reach a legal conclusion on that because that's obviously that is for the processing and handling of the grievances between the union and Safeway. However, again, whatever Instacart does, I don't think that no one would dispute that Instacart sends shoppers into stores, but Safeway has acknowledged that it has a specific relationship and agreement with Instacart. And that's the difference. Again, when most of us go shopping, we don't have a signed contract with Instacart. Safeway has acknowledged that it has an agreement with Instacart. And as the union demonstrated, that when Instacart employees are purchasing alcohol or Instacart workers are purchasing alcohol on behalf of whoever they're shopping for, they're asking Safeway employees as part of the contract that Instacart has with Safeway to validate the alcohol purchases. So again, that's a very different shopper experience than most people have when they go into a Safeway store. All right. I know you have that evidence, but why is that a violation of the CBA? Your Honor, it's arguably a violation of the CBA. And again, the board is not taking a position on whether the CBA has- Right, I understand that. I'm just saying for purposes of this argument, I'm trying to get a concrete handle on what exactly is at stake here. Your Honor, at stake here is ultimately whether the, well, at stake here is simply whether the union has shown a reasonable basis, then the probability that the requested information is relevant. So, would you answer my specific, would you answer my specific question about why asking the Safeway employee to verify the alcohol sale is unlawful or not in accordance with the CBA? Because arguably it falls within that section of the CBA that Safeway employees should be handling all the selling of merchandise. And that it should not be being done by the Instacart employees in connection with whatever control Safeway may or may not have over those Instacart workers when they're shopping in a Safeway store. Well, pardon me, counsel. Are you telling me that Mr. Smith goes in to buy a six pack of beer. He takes it to the checkout stand. He interacts with a Safeway employee and shows him his ID and he's over 21 years old. And that's the interaction there. How is it any different when an Instacart person goes? Well, arguably the difference is, is that when the Instacart worker goes into Safeway, they're not validating the purchase for the Instacart person that's shopping, but they're validating the purchase for the person that they're getting the groceries for. And again, what the union is simply trying to investigate is that apparently the workers from Instacart were telling Safeway employees that they were the ones that had to validate the purchase based on the agreement that Safeway had with Instacart. So again, all the union is trying to surmise here and to figure out is what exactly is that relationship between Instacart and Safeway. And again, very reasonably trying to determine whether at the end of the day, the Instacart agreement that Safeway has with them is undermining the very broad definition of unit work is set forth in the bargaining agreement. But that again, that's from the board's position. That's the interference there. It's a very narrow issue before this court is simply whether the union carried its minimal burden of demonstrating a probability that the Instacart contract would be relevant in carrying out its statutory duties of processing and handling the grievance at issue. Is it the union's position here that Mr. Smith, when he goes into Safeway, can get the checker to go get him a six pack of beer and come back? Your Honor, I can't specifically speak for how the process would work for in a non-Instacart situation, what role a Safeway employee would or would not have. You've talked a great deal of generalities, but I don't see there's any concrete example where any work that the union has jurisdiction over is being taken away by Instacart as opposed to a shopper who doesn't use Instacart. Your Honor, again, the Safeway has its own program that uses unionized workers to select and handle merchandise that people purchase, and people can go to Safeway through their website and have people who are Safeway employees get the merchandise for them. And so the issue here- You just don't know what the business owner is doing. And that's the kind of work that Instacart is doing. I'm sorry, I had a little trouble hearing you, Your Honor, but I believe that's correct from what I heard. The Instacart people do the selection rather than the customer himself or herself on the internet. Is that your position? Your Honor, it's not just the customer. Again, the issue here isn't that a typical customer, when they go into the grocery store and purchase groceries, I don't think the union is taking the position that Safeway employees have to select groceries for every customer that goes in the store. The issue is that Safeway has, as set forth in the bartering agreement, has its own group of selectors that will select groceries for people that ask Safeway to use its service to have people from Safeway select the groceries for them. And so the issue is, whether Safeway's specific arrangement with Instacart is violating and undermining that agreement in which Safeway has its own unionized employees do that work. So again, it's not saying that a typical customer can't select their own groceries. It's that this work may be being taken away from those customers who work directly with Safeway to have Safeway unionized employees do the shopping for them. Okay, I got you. And unless this court has any further questions, the board would simply ask that the court enforce its order. Thank you, Your Honor. Hello, Your Honors. May it please the court. Peter Thorine on behalf of the intervener, UFCW Local 5. I'd just like to reiterate a few basic points here. One is that Appendix E of the North Coast Agreement and Appendix F of the Northern California Agreement specifically state that online order selection is to be performed by unit employees. That's exactly what Instacart is doing. Now, Judge Bea, your point is well taken. If Jane Doe hires a neighbor to say, I'm under quarantine, go get my groceries. I'll give you five bucks. That's not unit work. But this is why we need the contract between Safeway and the union, sorry, Safeway and Instacart, because Instacart is performing union work in agreement with Safeway. And importantly, in reviewing this, the level of determination of the standard review, this court held in San Diego Newspaper Guild, the board's determination as to whether or not a piece of evidence is relevant in a given case is given great weight by the courts, either because it is a finding of fact, which is conclusive if supported by substantial evidence, or because it's a mixed question of law and fact, which is within the particular expertise of the board. Here, there is no reason to overturn the board's determination, particularly given the broad discovery type standard, liberal standard given to determinations of relevance in this context. Your position, counsel, that the labor law gives the same scope of discovery as does rule 26, reasonably calculated to lead to the discovery of relevant evidence? Correct. I believe that's correct. And in here- Counsel, I have a question, too, if you've finished answering Judge Beah's question. So is the problem that, is it the problem that potentially will be investigated that Safeway entered into a contract with Instacart? Is that the problem? Like, what, does Safeway have to have a contract with Instacart for Instacart to actually shop in Safeway stores? Well, it's an interesting question. It's kind of academic, though, because they've admitted that they have a contract with Instacart. And the question, you know, they have- It's not academic. It's not academic, because it goes to what's really going on in this case. And that's, judges are concerned about that as well as the precise question that the counsel want them to answer in a particular case. So, is that the problem, that Safeway is contracting with Instacart? So if Instacart just contracted with the person under quarantine and didn't have a contract with Safeway and went into Safeway stores and filled the person under quarantine's list, would that be problematic? No, I don't believe so. Because Safeway's the entity that has the obligation with the collective bargaining agreement that can't contract out the bargaining unit work. And if that were the situation, then it would be different. But here, we're at the investigatory phase. We're not determining the merits of the question. We're just getting an idea of the sense of the scope of the arrangement between Safeway and Instacart to determine whether or not the grievance has meritories. And if there are no further questions, I'll submit on that basis. All right, thank you very much, Mr. Thurine. Ms. Patel, I think you had some time left. Thank you, Your Honor. First thing I'd like to address is that Safeway is not conceding that the language of the CBA reads broadly.  and an issue before the arbitrator. Secondly, I'd like to address I'd like to speak to the fact that the union and the board are introducing new reasons for relevance. They did that at the hearing, other in the stipulated record, and they've done that today. And that is not permitted. Relevance is determined by the April 26 email sent by the union. It has to be established at the time the request is made and at the time Safeway makes the denial. If you look at the April 26 email, in that email, the union did not say that they were seeking information, seeking the contract to determine the amount of control Safeway had over these Instacart employees, or to determine the scope of the work that these Instacart employees were doing. Those issues were not raised previously, and it is clearly established in several cases, including Disneyland, that is a union's burden at the time the request is made to establish relevance. Also, I'd like to say that enforcing the board's decision here would create a new, lighter standard for the union's burden to establish relevance when it comes to third-party contracts. One case that I'd like to direct your attention to, that is easily distinguishable from the case here, is DirectSAT USA, a DC circuit ruling from 2019, where the employer was required to produce a contract, but only because the CBA specifically incorporated the third-party contract into its CBA language. Here, there's no such evidence. As such, we respectfully request that the court grant this petition. Thank you. Thank you very much, counsel. Safeway versus NLRB is submitted, and this session of the court is adjourned for today. This court for this session stands adjourned.
judges: Wardlaw, Bea, Rosenthal